In the Matter of 36 WEST MAIN, INC., Petitioner, against NEW YORK STATE LIQUOR AUTHORITY, Respondent.

Fourth Department, May 18, 1955.

---

* Also printed, *post*, p. 1208.

*Jacob L. Rubenstein* and *John H. Dittman* for petitioner.

*Dale J. Manchester* and *Alvin McKinley Sylvester* for respondent.

VAN DUSER, J. This proceeding involves a review of a determination of the New York State Liquor Authority. That body has suspended the license of the petitioner, 36 West Main, Inc. (Powers Hotel, Rochester, N. Y.), for a period of five days, and ordered its bond forfeited, on the ground that the petitioner had sold and delivered alcoholic beverages to an alleged '' minor '', on March 8 and 9, 1954, in violation of the provisions of section 65 (subd. 1) of the Alcoholic Beverage Control Law. The '' minor '' was a guest at the hotel, having been registered by, and with, a friend or acquaintance on March 5, 1954, as '' Mr. & Mrs. David Kinley '' of Buffalo.

The '' minor '' was '' apparently '' over the age of eighteen years. That fact is not disputed. Two city detectives of thirty-three and twenty-three years' experience respectively testified that when they apprehended the '' minor '' at the Hotel Seneca in Rochester for an alleged grand larceny (March 13, 1954), she gave three different names, gave her age as twenty-two years, which she, according to the undisputed testimony of the officers, and two other witnesses, '' apparently '' was.

The entire case of the Authority, as to her *actual* age, is based upon the testimony of the alleged '' minor '', and what purports to be a '' birth certificate '', showing the date of her birth as April 9, 1936, which, *if true,* would have made her age at the times of the alleged sale and delivery (March 8 and 9, 1954) seventeen years and eleven months, just one month less than eighteen years.

The only, and sole witness sworn by the Authority, and *testifying* as to the age of the alleged '' minor '' was the '' minor '' herself. Her testimony was received over the objection and exception of the petitioner. The testimony was unquestionably

" hearsay ", but a person so testifying is permitted to do so on the theory that one's own age is common knowledge " among the family " (see cases collected in 39 A. L. R. 376). The Court of Appeals in 1909, by its then Chief Judge CULLEN recognized that in New York State there was *up to that time no decision* that a witness might testify as to his own age (*Koester* v. *Rochester Candy Works,* 194 N. Y. 92, 97), although expressing the view that " as far as my experience goes the practice has been universal to permit such testimony ". It seems clear, however, that the exception allowing such testimony is, as stated, because the one so testifying, knew through " the family ", the date of his or her birth, from statements of his or her mother, father or other member of the " family ". The Supreme Court of Michigan has stated: " It is the general rule that a person is competent to testify to his own age. When, however, it appears that he has no recollection of his mother, and has no information upon the subject from his relatives or other members of the family, his opinion, based on the statements of other persons, is not evidence, while the statements of such persons are hearsay." (*People* v. *Colbath,* 141 Mich. 189, 190.) The court in *Sheppard* v. *State* (56 Tex. Crim. Rep. 604, 606), quoted from another case that " ' to prove pedigree, hearsay evidence is admissible when based upon information derived from deceased relatives of the party in question, or from his family history ' " and continued " ' but it must come from one or the other of the well recognized sources to relieve it from the general rule.' In this case we have the prosecuting witness stating that her mother had informed her as to her age."

In the instant case, it is the fact that the " minor " is an " illegitimate ". She testified, when asked if she knew the name of her natural parents, " their " last name was " Salisbury "; that she was born in the Mercy Hospital in Kansas City, Missouri (the records of which institution do not appear in the record); she was adopted from the " Kansas City Cradle ", which was across the street from the hospital. When asked if she knew *when* she was adopted, her reply was " *I'm not sure of the date* when it came through, but I was *brought in from the hospital May 20.*" (Emphasis supplied.) She never lived with her natural parents. There was, with them, no " family life ".

The adoptive parents, Mr. and Mrs. Rhyan of Kansas City, were not called to testify, nor is there a deposition taken from either of them. Dr. Maynard Whetstone of Independence, Missouri, the home of the adoptive parents, and who has been the family physician, " as far back as I can remember ", says the

witness, likewise was not called, nor was his deposition taken, although still alive.

In the present case, the " minor's " information regarding her own age was obtained, not from her natural parents with whom she never lived, or as a matter of common family knowledge or history, but from persons whose knowledge in turn must have been dependent upon hearsay.

So much for the testimony of the only witness called by the Authority.

The Authority, however, also placed in evidence a so-called " Birth Certificate ", which is of doubtful value, if any. *Concededly* it was prepared and filed over six months after the date of the alleged birth; it is signed by someone whose identity, profession, occupation, or employment is entirely lacking; it gives the name of the child as " Rhyan "; it states the name of her father to be " Harrison Rhyan " and that of her mother " Beulah Blanche Cook ", which probably were the names of her foster parents, for she testified, as we have pointed out, that the name of her real parents was " Salisbury ". It is not an unwarranted conclusion that the date of birth on the " certificate " was approximated, and in the absence of any evidence to the contrary, " hearsay ". This purported certificate is, moreover, obviously incomplete.

The *vital* question in this case is the age of the alleged minor at the time of the alleged violations. As to this question the burden of proof rested with the Authority to establish by " substantial evidence ". Until, and unless, " substantial evidence " is given by the Authority as to a violation, the licensee is not obliged to prove its innocence.

In our judgment, the Authority failed to establish its charges by such " substantial evidence ". It follows that its determination should be annulled.

All concur. Present — VAUGHAN, J. P., KIMBALL, PIPER, WHEELER and VAN DUSER, JJ.

Determination annulled, with $50 costs and disbursements.